IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-21-0458 |
| ELIAS NICK COSTIANES, JR., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

This case comes before the Court on limited remand, and the United States Court of Appeals for the Fourth Circuit retains jurisdiction of the appeal. (*See* ECF Nos. 169, 176.)

The Court of Appeals remanded this matter with the instruction that this Court determine whether a certain pardon Defendant Elias Nick Costianes, Jr. received in January 2025 relates and applies to the conviction he sustained earlier in the life of this case. (*See* ECF No. 169.) The Court of Appeals has expanded its remand at the request of the parties to permit this Court to rule on a motion the Government filed pursuant to Federal Rule of Criminal Procedure 48. (*See* ECF No. 176.) The Court of Appeals explained, however, that this Court was still to "determine, as an initial matter, whether or not the pardon applies to Costianes' conviction." (ECF No. 176.)

The Court concludes that the pardon does not apply to the conviction Costianes' sustained in this Court, and it directs the parties to provide additional briefing with respect to the Rule 48 Motion.

### I. Background

#### *A. Factual Background*

Defendant Elias Nick Costianes, Jr. was present at the United States Capitol on January 6, 2021. (*See* ECF No. 1-1 ¶ 5 (Criminal Complaint).) As a result of his presence and conduct there,

the U.S. District Court for the District of Columbia issued a warrant for his arrest, and the U.S. District Court for the District of Maryland issued warrants authorizing searches of Costianes' residence, vehicle, and cellphone. (*Id.* ¶ 6.) The FBI executed the warrants on February 12, 2021 in Nottingham, Maryland. (*Id.* ¶ 7.)

In this district, Costianes was ultimately charged in nine counts. (ECF No. 34.)[1] The indictment charged him with various offenses occurring in the District of Maryland, including several controlled substances offenses occurring on various dates from June 2019 through February 2021 and a firearms offense occurring on February 12, 2021. (*Id.*) As is relevant here, Count 9 charged Costianes with violating 18 U.S.C. § 922(g)(3), as follows:

> On or about February 12, 2021, in the District of Maryland, [Costianes], knowing he was an unlawful user of and addict to any controlled substance as defined in 21 U.S.C. § 802, knowingly possessed a firearm and ammunition: to wit, (a) one Glock 17 9mm pistol, bearing serial number SGS663; (b) one Smith & Wesson M&P 15 .556 caliber semi-automatic rifle, bearing serial number SN90598; (c) one Ruger Mini 14 Ranch Rifle .223 caliber semi-automatic rifle, bearing serial number 580-94983; (d) one Remington Model 870 12-gauge shotgun, bearing no visible serial number; (e) one box of Federal .556 caliber ammunition; (f) four boxes of .22 caliber long rifle ammunition with unknown manufacturer; (g) ten boxes of Remington 12-gauge ammunition; (h) three boxes of Winchester 9mm ammunition; (i) three rounds of Federal 9mm ammunition; (j) six boxes of 12-gauge buckshot with unknown manufacturer; (k) one box of Winchester .556 caliber ammunition; (l) three boxes of Winchester .223 caliber ammunition; (m) one round of 12-gauge ammunition with unknown manufacturer; (n) 29 rounds of .223 caliber ammunition with unknown manufacturer; (o) 14 rounds of 9mm Luger ammunition; (p) 47 rounds of .22 caliber long rifle ammunition; (q) 14 rounds of Remington 12-gauge ammunition; (r) 5 rounds of Winchester 12-gauge ammunition; (s) and 100 rounds of Federal 9mm Luger ammunition.

(*Id.* at 9.)

On June 8, 2023, Costianes pleaded guilty to Count 9. (ECF No. 83 at 1.) The factual

---

[1] In the District Court for the District of Columbia, Costianes was charged in six counts relating to his presence at the Capitol on January 6, 2021. Crim No. 21-00180-RJL, ECF No. 7 (D.D.C., March 3, 2021). He was charged with, *inter alia*, Obstruction of Congress and Aiding and Abetting in violation of 18 U.S.C. § 1512(c)(2); Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1); and Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2). *Id.*

2

stipulation in support of the Plea Agreement reflects that, during the February 12, 2021 search, agents seized Costianes' iPhone and searched his basement and located four firearms and thousands of rounds of ammunition. (*Id.* at 11–12.) Costianes stipulated and agreed that "he knowingly possessed" the firearms and ammunition, and that he "knew he was an unlawful user of cocaine, testosterone, and marijuana because [his] use of each substance was consistent, prolonged, and recent." (*Id.* at 12.) On September 24, 2024, this Court sentenced Costianes to one year and one day of incarceration. (ECF No. 139.)

On January 20, 2025, the President issued a proclamation "grant[ing] a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021" (the "January 20 Pardon"). Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025). The Certificate of Pardon issued to Costianes explains that he "was pardoned by the Presidential Proclamation of January 20, 2025" and that "[t]he pardon applies only to convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021." (ECF No. 175-1.)[2]

### B. *Procedural Background*

Costianes' appeal before the Fourth Circuit was docketed on October 15, 2024, prior to the issuance of the January 20 Pardon. (Doc. 1, *United States v. Costianes*, No. 24-4543 (4th Cir. Oct. 15, 2024).) On February 12, 2025—the day Costianes surrendered to commence service of his sentence—Costianes filed (in the Court of Appeals) an Emergency Motion for Injunction to the U.S. Marshals to Release Appellant, Stay the Sentence, and Expedite this Motion Pending Appeal ("Emergency Motion"), which sought Costianes' immediate release. (Doc. 17, No. 24-4543.)

---

[2] On January 21, 2025, in Costianes' case in the District of Columbia, the Government filed an unopposed Motion to Dismiss, citing the January 20 Pardon. Crim No. 21-00180-RJL, ECF No. 92 (D.D.C., January 21, 2025). The court granted the motion. Crim No. 21-00180-RJL, ECF No. 93 (D.D.C., January 22, 2025).

3

That motion contended that "[b]ecause the case in the Maryland District Court arose from and relied upon the search warrant for January 6th," the January 20 Pardon applies to Costianes. (*Id.*) The Government filed a response "agree[ing] that the President pardoned [Costianes]" and that he "should be immediately released from custody in connection with this case, his sentence should be stayed, and this Court should resolve his motion on an expedited basis." (Doc. 20, No. 24-4543.)

On February 27, 2025, the Court of Appeals set a briefing schedule, and asked the parties to respond to three questions:

> 1. Separate and apart from the issue of mootness, whether this Court has jurisdiction to consider, and whether it is prudent for this Court to consider, Costianes' motion in the absence of any ruling by the district court on the [January 20 Pardon] and in absence of a motion to vacate Costianes' sentence.
>
> 2. Whether this Court has authority to review and interpret the [January 20 Pardon].
>
> 3. Whether the [January 20 Pardon] applies in this case as a conviction "related to events that occurred at or near the United States Capitol on January 6, 2021."

(Doc. 23, No. 24-4543.)

Rather than respond to those questions, the parties filed a Joint Motion to Vacate Conviction and Remand for Dismissal on March 12, 2025 ("Motion to Vacate"). (Doc. 27, No. 24-4543.) In the Motion to Vacate, the parties "jointly move[d] to vacate the defendant's conviction and remand this case to the district court to dismiss the indictment with prejudice pursuant to Federal Rule of Criminal Procedure 48(a)." (*Id.*) The parties cited the January 20 Pardon and explained that, "[a]fter further considering this case in light of the Court's questions, the government has determined that the more efficient and prudent course—and the one most consistent with President Trump's instructions—is to move to vacate Mr. Costianes's conviction and dismiss the indictment under Rule 48(a)." (*Id.*)

In a March 25, 2025 order, the Fourth Circuit explained that it had received the Motion to

Vacate and that, "to consider the relief sought in this latest motion and in the prior emergency motion, which remains outstanding," it was "order[ing] the parties to provide the supplemental responses as requested in the court's order of February 27, 2025." (Doc. 30, No. 24-4543.) The parties filed responses. (Docs. 33–34, No. 24-4543.)

The Fourth Circuit then remanded the case to this Court. In remanding the case, the Fourth Circuit explained:

> In our view, both pending motions require a determination of whether the pardon applies to Costianes' conviction. Given that the district court did not address that issue, and "mindful that we are a court of review, not of first view," *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)), we remand to the district court for the limited purpose of considering the pending motions, and any other related motions the parties wish to make concerning the impact of the pardon on Costianes' conviction. This court will retain jurisdiction of the appeal.

(ECF No. 169 at 3.)

After the case was remanded, the Government filed a Consent Motion to Dismiss Indictment with Prejudice in this Court, which sought to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48 (the "Rule 48 Motion"). (ECF No. 170.)

This Court issued a Memorandum and Order on April 10, 2025. (ECF No. 171.) The Court concluded that it did not have jurisdiction to rule on the Rule 48 Motion, given the narrowness of the Fourth Circuit's remand. (*Id.* at 3–5.) The Court further concluded that, pursuant to Federal Rule of Criminal Procedure 37(a)(3), the Motion raised a substantial question. (*Id.* at 5–11.) The Court also explained that, because the Fourth Circuit directed it to consider the impact of the January 20 Pardon on Costianes' conviction, the parties were required to provide briefing with respect to that question. (*Id.* at 5.) Costianes provided that additional briefing on April 21, 2025, (ECF No. 174), and—after a brief extension granted by the Court—the Government provided its briefing on April 24, 2025, (ECF No. 175).

5

Further, the Government filed with the Fourth Circuit a Notice relating to this Court's Rule 37 ruling, as well as a Consent Motion to Expand Remand Order. (Docs. 38, 39, No. 24-4543.) The Fourth Circuit issued an order expanding its remand in which it explained that "[t]he Government now asks us to expand the scope of our remand to permit the district court to rule on the Rule 48 motion. We grant the Government's motion, but order that the district court determine, as an initial matter, whether or not the pardon applies to Costianes' conviction. This court will retain jurisdiction of the appeal." (ECF No. 176 at 3.)

Thus, the Court first addresses whether the Pardon applies to Costianes' conviction. The Court will then turn to the Rule 48 Motion.

## II. The Pardon's Applicability to Costianes' Conviction

### A. Court's Authority to Interpret the Pardon

The Court begins with a discussion on the reviewability of the Pardon, given that both parties cite case law about the President's power to issue pardons, which misconstrues the issue presented here. This is not about whether the President has the power to pardon federal offenses. Of course he does. "The U.S. Constitution bestows solely on the President the 'Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.'" *Rosemond v. Hudgins*, 92 F.4th 518, 525 (4th Cir. 2024) (citing U.S. CONST. art. II, § 2, cl. 2). This case is also not about whether the scope of the Pardon exceeded the President's authority. Indeed, "[t]o the executive alone is intrusted the power of pardon; and it is granted *without limit*." *United States v. Klein*, 80 U.S. 128, 147 (1871) (emphasis added).

Rather, here, the Court does not "presume to review the validity of the pardon, only its proper scope." *United States v. Wilson*, No. 25-3041, 2025 WL 999985, at *2 (D.C. Cir. Apr. 2, 2025) (hereinafter "*Wilson II*"). And, while "[n]either the legislative nor the judicial branches can

6

exercise or alter" the President's pardon power, *Rosemond*, 92 F.4th at 525, "[c]ourts have long exercised their authority to interpret and apply Presidential pardons." *United States v. Wilson*, Crim. No. 23-427-1 (DLF), 2025 WL 1009047, at *3 (D.D.C. Mar. 13, 2025) (hereinafter "*Wilson I*") (collecting cases). This makes good sense. In our system of government, the President has the pardon power and is tasked with "tak[ing] Care that the Laws be faithfully executed," U.S. CONST. art. II, § 3, and "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

In addition, Costianes argues that this Court has no authority to interpret the January 20 Pardon, given that both parties agree that it applies, and that, because the Government agrees that the Pardon applies to him, that ends the Court's inquiry.[3] The Government does not appear to join in these arguments. Costianes' arguments are an oversimplification of the rule "that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering." *See Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). This rule provides that when "the agency's interpretation is not unreasonable and the language of the order bears its construction[,] courts must respect it." *Id.* (quoting *Udall v. Tallman*, 380 U.S. 1, 4, 16–18 (1965)) (cleaned up). That rule, while indisputably sound, is not applicable here for the reasons discussed below.

### B. The Pardon Does Not Apply to Costianes' 18 U.S.C. § 922(g)(3) Conviction

In determining the Pardon's scope, the Court applies normal rules of construction. The

---

[3] Costianes also makes an argument that this matter does not present a case or controversy pursuant to Article III of the United States Constitution. (*See* ECF No. 174 at 9.) The case itself of course presents a case or controversy pursuant to Article III: it was a criminal prosecution brought by the federal government pursuant to federal criminal statutes, and judgment has been entered. That this particular issue is not disputed by the parties does not strip this Court of jurisdiction. *See United States v. Adams*, Crim. No. 24-556 (DEH), 2025 WL 978572, at *15 (S.D.N.Y. Apr. 2, 2025) ("But critically, courts have noted that whether a defendant consents to dismissal is not dispositive." (citing *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981)); *see also* Fed. R. Crim. P. 48 (requiring "leave of court" to dismiss an indictment).

7

Court finds in the law no reason to apply different rules to a pardon than courts apply when construing other legal documents. *See Andrews*, 958 F.3d at 1078 (explaining that "[t]he text of President Obama's commutation order governs our review" and reviewing the "plain text of the commutation order"); *cf. United States v. Ehsan*, 163 F.3d 855, 858 (4th Cir. 1998) (examining "the language of the Executive Order" and applying the "ordinary meaning" of terms therein). And, as is particularly relevant to this case, other federal courts have applied normal rules of construction to the January 20 Pardon. *See Wilson I*, 2025 WL 1009047, at *3–4 (explaining that "courts use ordinary tools of statutory interpretation to determine the meaning of a pardon"); *Wilson II*, 2025 WL 999985, at *2 (discussing the plain language of the text and explaining that the court's decision "hinges on the text of the pardon"); *United States v. Kelley*, Crim. No. 22-118-TAV-JEM-1, 2025 WL 757583, at *3 (E.D. Tenn. Mar. 10, 2025) (discussing the Pardon and explaining that "[t]he Court's analysis begins with the text" and that "[c]ourts tasked with interpreting the meaning of Executive materials have generally sought to effectuate their ordinary meaning").

Thus, the Court begins with the language of the Pardon itself. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."); *cf. United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself."). And, "[i]n this case it is also where the inquiry should end, for where, as here, the . . . language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (citation and quotation marks omitted). A case explaining the related process of statutory construction sheds useful light:

> [I]f the statutory language "is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). The language being facially clear and "within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms." *Id.* Thus, if the statutory language is not ambiguous, then we do not engage in interpretation of the statute, but merely in its application.

*United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994).

The Pardon—titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021"—provides that:

> This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.
>
> Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby: . . .
>
> grant a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021[.]

Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025). The Pardon goes on to "direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id.*

The language in the Pardon is plain, and the terms are clear and unambiguous. The Pardon was granted to "individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021[.]" As another court easily concluded, "[f]or an offense to fall within [the Pardon's] scope, it must be tethered to a specific time—January 6, 2021—and place—at or near the U.S. Capitol." *Wilson I*, 2025 WL 1009047, at *4. In short, the Court concludes that the Pardon means what it says. *Cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in

9

a statute what it means and means in a statute what it says there . . . . When the words of a statute are unambiguous, then . . . judicial inquiry is complete." (citations and quotation marks omitted)). As discussed above, there is no reason not to apply this simple canon of construction to pardons, just as courts do in every other context—statutes, regulations, contracts, deeds, and legal documents of all kinds. Accordingly, if an individual was convicted of an offense related to events that occurred (1) at or near the United States Capitol and (2) on January 6, 2021, the Pardon applies. Otherwise, it does not.

And in this case—where Costianes pleaded guilty to possessing firearms and ammunition by an unlawful user of any controlled substance in violation 18 U.S.C. § 922(g)(3) on February 12, 2021 at his home in Maryland—the Pardon does not apply. The offense occurred on February 12, 2021, not on January 6, 2021, in the District of Maryland, not at or near the United States Capitol. The offense itself in no way related to the events of January 6, 2021 at the Capitol.

Further, the Pardon directs the Attorney General to pursue dismissal "of all pending indictments against individuals *for their conduct related to the events* at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025) (emphasis added). Costianes' conduct on February 12, 2021 bears no relation whatsoever to the events at the United States Capitol on January 6, 2021. Indeed, as the parties point out, there is an "absence of any indication that the firearms and ammunition were used outside the home." (ECF No. 174 at 16 (quoting the Government's Fourth Circuit briefing); *see also id.* at 18 ("Mr. Costianes was not using the firearm or outside of his home.").) It is difficult to comprehend, then, how an offense relating to those firearms and ammunition could be "related to" conduct that occurred outside of his home, in a different district, on a different date.

Thus, in short, the Court is not narrowing or otherwise altering the Pardon; it is simply

applying it. The language of the Pardon is so clear and unambiguous that the Court need not "interpret" it at all.

> And, as the United States Court of Appeals for the District of Columbia recently explained:
>
> The pardon does not cover offenses wholly independent of events at the Capitol on January 6, even if uncovered during investigation of January 6 offenses. What matters is the relationship between the offenses. [The relevant] firearm offenses are not "offenses related to events that occurred" at the Capitol on January 6. They occurred at a different time and place, and the elements of these offenses—possession of an unlicensed firearm and the possession of firearms by a prohibited person—bear no relationship to conduct that occurred at the Capitol on January 6. Thus, by the plain terms of the Pardon, they are not covered.

*Wilson II*, 2025 WL 999985, at *2. So too here, the offense of which Costianes was convicted in this Court—possession of firearms and ammunition by an unlawful user of any controlled substance—is entirely unrelated to his conduct on January 6 and to the offenses with which he was charged in the District Court for the District of Columbia.

The parties, resisting the plain and unambiguous meaning of the Pardon, wish to draw the Court into an interpretive exercise. The Government and Costianes argue that the Court should conclude that the Pardon applies to his offense because it was discovered as a result of the execution of a warrant arising out of his conduct at the United States Capitol on January 6, 2021, and that the Pardon's "related to" language is broad enough to cover it. True enough, Costianes' crime would likely not have been uncovered had he not been present at the United States Capitol that day and had the warrants related to that conduct not issued. However, the plain language of the Pardon simply cannot be stretched so far as to cover Costianes' offense in this district.

The Court recognizes that "related to" can have a broad meaning. But even such a broad term cannot be unlimited in scope. *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes [it] would never run its course, for

11

really, universally, relations stop nowhere[.]" (citation omitted) (cleaned up)). The term "refers to a relationship or nexus of some kind" and "its nature and strength[] will be informed by context." *Dubin v. United States*, 599 U.S. 110, 119 (2023).

The context here makes abundantly clear that the Pardon does not extend so far as to cover offenses discovered as a result of investigations relating to January 6. The Pardon applies to *offenses*—not *investigations*—related to January 6. *See Wilson II*, 2025 WL 999985, at *2 ("That language plainly applies to related offenses—not, as here, to an offense that is only connected to January 6 by the happenstance that it was uncovered during investigation of the unrelated January 6 offenses."); *Wilson I*, 2025 WL 1009047, at *5 ("Contrary to the pardon's plain language and structure, the parties' reading of the pardon conflates offenses discovered during the January 6 investigations with offenses that occurred at or near the Capitol on January 6."). The Pardon could have easily been drafted to cover such a scenario, and it was not.

The parties also argue that the "related to" language would be surplusage if it is not given the expansive reading they suggest. Not so. The Government argues that the language of the Pardon is "not limited solely to offenses that occurred at the U.S. Capitol on January 6, 2021," and perhaps the Government is correct. *See Wilson I*, 2025 WL 1009047, at *5 ("To be sure, the 'related to' language in the pardon leaves open the possibility that certain criminal actions may be close enough in time and place to the events of January 6 so as to fall within the pardon."). The Court can conjure up various offenses that might be covered by the Pardon that did not occur at the United States Capitol on January 6, 2021 that could be covered by the "related to" language. Take, for example, an individual charged with conspiracy to obstruct Congress in violation of 18 U.S.C. § 1512(c)(2). This individual may have conspired with others to engage in obstruction of Congress on January 6, 2021 at the Capitol, but the individual engaged in such conspiracy days or

12

even weeks before that date, and nowhere near the Capitol. Such offense would likely be "*related to*" the events of January 6, 2021 at the United States Capitol, but would not have occurred *at* the United States Capitol on January 6, 2021. But this discussion makes clear that the "related to" language plainly requires that the "offense" itself be tied to both a specific date and place. Here, while the investigation that ultimately led to Costianes' conviction in this Court was of course related to January 6, the offense itself was not.[4]

The parties also argue that, because the Pardon purports to "end[] a grave national injustice that has been perpetrated upon the American people over the last four years and begin[] a process of national reconciliation," it must apply to investigations arising out of January 6-related conduct. However, where the language in the Pardon is so clear and unambiguous, the Court cannot simply read additional words into it to give it the meaning the parties urge. Furthermore, it is not at all clear how—by reference to a "grave national injustice"—the President intended to extend the Pardon to individuals engaged in illegal conduct unrelated to the events of January 6.[5] Such a benefit to individuals like Costianes would extend far beyond any reasonable reading of the Pardon.

Further, the parties argue that the Court should accord deference to the Government's interpretation of the Pardon because it is reasonable. Both parties cite to *Andrews v. Warden*, 958

---

[4] Costianes also attempts to argue that his offense here is related to the events of January 6 because it "was 'co-occurring' at the time of January 6, 2021, and while Mr. Costianes was at the U.S. Capitol, because he was still possessing the firearms at his residence while being a user or addict of controlled substances, even when he was at the Capitol." (ECF No. 174 at 21.) Not only is this not compelling, it is not true. He was charged with and pleaded guilty to possessing firearms and ammunition *on February 12, 2021*, not some range of time including January 6, 2021. (*See* ECF No. 34 at 9; ECF No. 83 at 11–12.)

[5] Costianes also states that it is not unreasonable "[t]hat the DOJ determined that the 'grave national injustice' includes the non-final conviction and sentence that was non-violent and only occurring within the confines of Mr. Costianes' residence." (ECF No. 174 at 17.) In this argument, Costianes reads even more terms into the Pardon. It is not clear why it matters that it is a "non-final conviction" that was "non-violent" and "only occurring within the confines" of his residence insofar as the "grave national injustice" is concerned.

13

F.3d 1072 (11th Cir. 2020) for this proposition. As the Eleventh Circuit explained in that case:

> The Supreme Court has ruled that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering. *Udall v. Tallman*, 380 U.S. 1, 4, 16–18 (1965) . . . . The Court explained that if an agency's "interpretation is not unreasonable" and "the language of the order[ ] bears [its] construction," "courts must . . . respect it." *Udall*, 380 U.S. at 4, 18.

*Andrews*, 958 F.3d at 1078. However, here, the Government's interpretation is unreasonable, and the language of the Pardon does not bear the construction the parties urge.

As discussed above, the Pardon's text is plain and unambiguous, and the parties' reading—that the Pardon applies to offenses discovered as a result of the execution of January 6-related warrants—is unreasonable. The parties essentially ask that the Court read in additional words to the Pardon. (*See, e.g.*, ECF No. 174 at 17 (explaining that "that the pardon includes *the investigation of* and prosecution for offenses relating to January 6th that have been perpetrated upon the people over the last four years" (emphasis added).) This the Court may not do. *See In re Stetler*, 22 F. Cas. 1314, 1316 (C.C.E.D. Pa. 1852) ("We cannot, by judicial construction, expand the pardon of one felony into a pardon of two"). The unreasonableness of the Government's position is underscored by its inconsistent application of the Pardon. *See Wilson I*, 2025 WL 1009047, at *6–7 (describing the varying approaches taken by the Government in other criminal cases, and explaining that "[i]n cases across the country, the Department appears to be shifting positions, making decisions about the scope of the pardon, as it sees fit").

In short, the meaning proposed by the parties is patently in conflict with the plain terms of the Pardon. Thus, the Court concludes that the Pardon does not apply to Costianes' § 922(3)(g) conviction here.

**III.    Rule 48**

The Court now turns to the pending Rule 48 Motion. Because the parties' briefs do not

14

provide adequate grounds for the Court to determine whether to grant leave to dismiss the indictment, the parties will be directed to file additional briefing.

As the Court previously explained, Federal Rule of Criminal Procedure 48(a) provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." The Supreme Court has explained that—while lower courts have held that Rule 48 permits a court to deny a motion consented to by a defendant—"[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977). However, "the history of the Rule belies the notion that its *only* scope and purpose is the protection of the defendant." *United States v. Cowan*, 524 F.2d 504, 512 (5th Cir. 1975) (emphasis added).

"Courts have held that by including the phrase 'leave of court' in Rule 48(a), 'the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice.'" *United States v. Manbeck*, 744 F.2d 360, 371 (4th Cir. 1984) (quoting *Cowan*, 524 F.2d at 512). However, the Court's discretion in the Rule 48 context is very limited. Indeed, a district court "must grant the [Rule 48(a)] motion absent a finding of bad faith or disservice to the public interest." *United States v. Perate*, 719 F.2d 706, 710 (4th Cir. 1983) (citing *Rinaldi*, 434 U.S. at 30). The Fourth Circuit has analyzed these issues as one and the same: as the Fourth Circuit has explained, "the court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." *United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000); *see also United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) ("The disservice to the public interest must be found, if at all, in the

motive of the prosecutor."). Further, "[b]ad faith by the government cannot be presumed." *Fowlkes v. United States*, Crim. No. CCB-10-332, 2016 WL 6680041, at *3 (D. Md. Nov. 14, 2016) (citing *Rinaldi*, 434 U.S. at 30). And "[e]xamples of disservice to the public interest include the prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled." *Smith*, 55 F.3d at 158–59.

In addition, "Rule 48(a) requires that the government set forth the basis for its motion to dismiss." *United States v. Adams*, Crim. No. 24-556 (DEH), 2025 WL 978572, at *15 (S.D.N.Y. Apr. 2, 2025) (collecting cases); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) ("Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than a mere conclusory interest." (citation and quotation marks omitted)). "The reason for requiring the government to state its actual reasons for seeking dismissal is simple: Since the court must exercise sound judicial discretion in considering a request for dismissal, it must have sufficient factual information supporting the recommendation." *Adams*, 2025 WL 978572, at *16 (citation and quotation marks omitted).

The Government's Rule 48 Motion is spare. The only reasoning that the Government provides in support of its request—beyond describing the Court's limited discretion—is that:

> irrespective of whether the President's proclamation granting "a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021," *see* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 2[9], 2025), applies to Mr. Costanies's [sic] conviction, the Department of Justice's actions in light of that presidential order provide no basis for a finding of bad faith.

(ECF No. 170 at 3.)

However, at the time the Government filed the Rule 48 Motion, it did not have the benefit of this Court's ruling on the applicability of the Pardon. The Court has now ruled that the Pardon

plainly does not permit a reading that would pull Costianes' instant conviction into its scope, and that such a reading is unreasonable.

The Government argues that "the Court need not agree that the pardon applies here to conclude nonetheless that the United States's actions in light of the President's order provide no basis for a finding of bad faith." (ECF No. 177.) The Court agrees, but only to a point. Here, the Court has not only concluded that the Pardon does not apply, but has concluded that the Pardon is clear and unambiguous, that it plainly does not apply here, and that the Government's interpretation of the pardon should not be accorded deference because it is unreasonable. The Government has cited no authority for the proposition that—where its reading of a pardon is unreasonable—the Court can nevertheless grant a Rule 48 Motion on nothing more than the Government's say-so that "the Department of Justice's actions . . . provide no basis for a finding of bad faith." In such a scenario, it appears that the Government would be in essence bypassing the Court's conclusion that the Pardon does not apply. *Cf. United States v. Hayden*, 860 F.2d 1483, 1489 (9th Cir. 1988) (explaining that the government's use of "the Rule 48(a) motion as a pretext to bypass [the court's] denial of [a] continuance" would be "a clear act of bad faith"). Further, as the Government explains, the "[t]he definition of 'bad faith' in the context of Criminal Rule 48(a) motions has been purposefully 'circumscribed' to cover only instances where a prosecutor is acting unethically," (ECF No. 175 at 10), and surely there is a point at which an unreasonable reading of the Pardon crosses the line from merely being incorrect to revealing bad faith.

In addition, the Government argues that it has been consistent in its application of the Pardon language. The Court previously cited a non-exhaustive list of cases in which the Government has stated that the Pardon does not apply. (*See* ECF No. 171 at 8–10.) The Court takes the parties' point that certain cases in which the Government has opposed the application of

17

the Pardon are dissimilar to this case in certain ways. (*See* ECF No. 174 at 18–20; ECF No. 175 at 8–10.) The Government argues, for instance, that in the Taranto and Kelley cases, the investigations relating to those cases were not connected to warrants issued as a result of January 6 and that the Pardon does not reach them. (ECF No. 175 at 8–10.) And, more broadly, the Government suggests that it has consistently applied the Pardon. (*Id.*) However, this simply does not appear to be the case across the board. As another court has aptly pointed out:

> The Department's proffered justifications for the varying positions it has taken in cases across the country are not borne out by the record. As noted, the government defended its continued prosecution of a child pornography case in one district on the ground that some of the evidence in support of that prosecution came from a preexisting child exploitation (but not child pornography) investigation. Rough Hr'g Tr. at 21–23; *see United States v. Daniel*, No. 3:24-cr-209 (W.D.N.C.). At the same time, however, court records show that the government continues to prosecute a child pornography case in another district, even though the evidence in support of those child pornography charges allegedly arose solely from evidence seized as a result of a January 6 search warrant. *See* United States' Opp'n to Colton's Mot. to Suppress at 1–7, *United States v. Colton*, No. 2:24-cr-29-DAD (E.D. Cal. Oct. 11, 2024). And in another January 6 case, the government has argued that a defendant's convictions for various unrelated felonies, including possession of classified information, are covered by the pardon, *see* Rough Hr'g Tr. at 33–34, even though the government was aware of information related to the classified information offense before it conducted the January 6 search of the defendant's home, *see* United States' Sentencing Mem. at 5–6, *United States v. Brown*, No. 8:21-cr-348 (M.D. Fla. Mar. 24, 2023) (describing Air Force Office of Special Investigations' previous investigation of the defendant regarding the same classified information).

*Wilson I*, 2025 WL 1009047, at *7. The Government has not addressed these cases, nor has it cited authority for the proposition that such an inconsistent application of the Pardon can be undertaken in good faith.

All that said, the Court is fully cognizant of its limited role in the context of the Rule 48 Motion, and that—although Rule 48 was "intended as a power to check power"—"the rule was not promulgated to shift absolute power from the Executive to the Judicial Branch." *Cowan*, 524 F.2d at 513. "[T]he Executive remains the absolute judge of whether a prosecution should be

18

initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." *Id.* And the Government of course has broad prosecutorial discretion. *See United States v. Blaszczak*, 56 F.4th 230, 238 (2d Cir. 2022) ("The government may elect to eschew or discontinue prosecutions for any of a number of reasons. Rarely will the judiciary overrule the Executive Branch's exercise of these prosecutorial decisions.").

There might be all manner of good faith reasons to seek the dismissal of this case. But if reliance on the Pardon arguably was once one such reason, it is no longer, given the Court's unequivocal rejection of the parties' proposed interpretation. The President did not pardon Costianes for the instant offense. Any contention otherwise is now bad faith because it is not just incorrect, it is—as the Court has concluded above—unreasonable. Thus, as the record currently stands, the Court is unable to conclude that the Government is not acting in bad faith, and the parties will be directed to provide additional briefing.

## IV.    Conclusion

For the foregoing reasons, it is ORDERED that:

1. The Court concludes that the Pardon does not apply to Costianes' 18 U.S.C. § 922(g)(3) conviction in this Court; and

2. The parties SHALL FILE any supplemental briefing by May 27, 2025.

DATED this _8_ day of May, 2025.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
United States District Judge